The case on this morning's docket is Price v. City of Belleville, No. 5-18-0312, Counsel, Court, and Count. You may proceed. May it please the Court, Mr. Horner. Good morning, Your Honors. My name is Eric Ryan. I represent the claimant in this case, who is Plaintiff Price, who has filed 4-5-F-O-I-8, a request for the City of Belleville, beginning in December of 2016, and the last one was in February of 2017. Now, Your Honors, in 1960, this defendant, City of Belleville, made building records open to the public. They made them public records, and they made them open to inspection. In 2019, this defendant claims that the same records are exempt from F-O-I-8 disclosure, claiming a private building exemption from the Act. Even when part of the development, its $3 million sewer system was without a doubt built with public money by the City of Belleville. Would that make every business eligible for an F-O-I? We believe so. Just because of the sewer? Yes, and the extent of it, $3 million. There's no houses out there. The extent of it? Yes. How do you qualify that? It is one operating business that there is now. There's no neighborhood. There's no homes. It got a TIF based on being on top of a bluff in a floodplain. So, the issue is, how can the City of Belleville claim that documents it considers public are really private and should not see the light of day? We believe that the trial court, Judge Machine and then Judge McGlynn erred by dismissing the plaintiff's complaint. He claimed Section 7-1-K exemption in the FOIA Act has no application to a project, quote, developed in part with public funds. Simply put, we are alleging that because of the extensive investment of the City and the TIF that the owners got, the developers got, that this project has been developed in part with public money. It is not the requirement that the whole project be built by City taxpayer earnings. The City failed the court below to prove with any evidence, much less clear and convincing evidence, which was their burden of proof at a trial, that the exemption applies. For instance, there was no sworn testimony taken from the City, no City official at all, including the building director, filed any sworn affidavits opposing my client's affidavits in this case. Now, in both sides' briefs, Your Honor, there was a lot of boilerplate FOIA law that cannot be sloughed over. You must pay attention to it, please, because it's key to deciding this case. Let me ask you a question. I know it's not been raised, but Judge McGlynn's order was May 22, 2018, and you stated in your brief that our jurisdiction is based on Rule 301. But how do we have jurisdiction when your motion is based on a motion that was filed over 30 days beyond May 22, 2018? Wouldn't that be only by a 2401 motion? Your Honor, we filed numerous post-trial motions after we did not receive the court judgment from the clerk. Judge McGlynn decided this case, and the City had not caused appeal, based on case law that says once there's a practice in the court of the court clerk sending out orders, the counselor did not have to check with the clerk every week to see if the case has been decided. So that's why we got more time to file these motions. Once again, the City does not contest the jurisdiction of this court. But this court does not have jurisdiction, cannot make itself have jurisdiction when it doesn't have it. And if the parties don't want us to decide a case, we have to decide whether we have jurisdiction, don't we? Yes, and I believe the basis of the record in the court below does establish why Judge McGlynn gave us more time, not just the 30 days, because we didn't even know about the existence of the order that dismissed the complaint at that point. Getting back to my argument about the case law on FOIA, exemptions must be written narrowly by the trial court and by this court to effectuate the purpose of the act. All ballots shall be resolved in favor of disclosure. It is Mr. Price's position that Ordinance No. 150 tiffs the ballots in favor of disclosure in this case. Now, we pledge that this big haul-through-house development across the highway from the Shrine was built because of the developer not having to spend $3 million for sewers and because he received a tiff. The city cites no case law in its favor, just a CLE article at the trial court level and here, but cites no authority. Now, I've had published three CLE articles myself in my years, and they're not worthy of being cited. The case law and statutory law in those articles might be, but not just a bare allegation by a couple of authors. Now, waiver comes into play in this case two ways, Your Honors. Number one is Ordinance No. 150 in Belleville makes public in Belleville building plans and spec documents, even if the FOIA had not been passed 24 years later. By the way, that Ordinance No. 150 has never been repealed by the city. My second point on waiver is that of the plaintiff's four or five late 2016 into February of 2017 written FOIA demands, the city only claimed one, the one he made on February 9th of 2017, was exempt. And that was by a city attorney, Mr. Horner's letter to my client within five days of the 9th of February. The problem is the city attorney is not the responder. The official statutory responder, the only person in Belleville who has the power to invoke an exemption or has the power to make the documents available is the city clerk. And the city clerk never once in the record, all of which is before Your Honors, never once asserted any kind of exemption at all. And I would point out that neither judge in St. Clair County faced this issue squarely. Realize the judge machine erred when he allowed the defendant to make a developer's privacy rights claim in this case. And I have five points to make. Number one, even if such a right exists in the FOIA law, the defendant's Ordinance 150 obliterates it. And the public nature of billing documents gave this developer no reasonable expectation of privacy, which should be the standard, in the documents he sent to the city to be approved. His plan, specification, the billing permits, the change orders. He had no expectation of privacy that was reasonable because the city, by law, from 1960, made those public documents. My second point of waiver is in January of 2017, the Director of Housing and Building, Robert Sabo, allowed my client a limited inspection of his file. So if the city, on this project, if the city really did believe itself that these documents were private, exempt from disclosure, should remain secret, they would have never allowed him to see any documents in this file. But they did. Third point of waiver, Your Honors, is the city sets no law granting it standing to assert the rights of another. The developer did not intervene at the trial court stage, circuit court stage, and they have not intervened. The Keller family did not intervene at this point. So the city, we would argue, has not cited any law that gives it the right to assert the standing on privacy of someone else. Number four is the trial court never applied the real FOIA test to determine if the privacy rights of somebody are going to be invaded and thus whether or not records are exempt. And that case is out of the First District National Association of Criminal Defense Lawyers versus the Chicago Police Department. Now, for the city to win based on their privacy of another defense, the court, the trial court, Judge Lechine, who is the initial judge in this case, was required to make findings on four factors. He never did. Number one is the plaintiff's interest in the disclosure. That is assumed and presumed by the language of the FOIA from the state of Illinois. Number two is the public's interest in disclosure. Once again, that is assumed by the law we're here on today. Number three is the degree of invasion of privacy. That's none in this case because the city made these documents all public documents. And number four is whether alternative means existed to obtain the information. Now, one could say, like I think Judge Lechine alluded to in his order from 2017, that because this order exists that makes the documents public, that the plaintiff didn't even need to go to FOIA court. He didn't need to file an action. He didn't need to file the request for documents. He could have just asked the city to see them. Well, number one, he did ask the city to see them, and they would not give him all the documents. And number two, the law makes it discretionary with the city if they're going to allow a public inspection or copying. And the FOIA makes no such exception to disclosure. My fifth point on the privacy claim is during construction, of course, we know the logical inference from the evidence is that dozens of people would have seen the plans, permits, specification, and change orders. Dozens, including city building officials. That means that these documents are not private and no builder had, no developer had the reasonable expectation of privacy in the documents. So in conclusion, Your Honor, if the plaintiff has pleaded facts that would allow the circuit court or this court to grant him relief, of course, this court looks at the legal issues de novo. And over immediate disclosure after a trial, where findings and facts are made by the court, including this court, could apply the Chicago defense attorney standard to the facts of this case. We believe that there should be immediate disclosure after trial, and the word of statutory attorney's fee should my client be victorious at trial. Thank you. Thank you, counsel. Counsel for Rapplee.  May it please the court. Counsel. As counsel indicated, the sole issue before this court is the propriety of the circuit court's dismissal of plaintiff's complaint under the Freedom of Information Act. This case is essentially. For the record, state your name, please. Oh, I'm sorry. Garrett Horner, here on behalf of the city of Bellevue. Again, the sole issue is the propriety of the circuit court's dismissal of plaintiff's complaint. The issue is essentially framed by the FOIA request itself, which can be found at the record at page C11 that's attached to Exhibit 1 of the plaintiff's complaint. And it says, quote, I am requesting access to review the plans and specifications that was approved by the city of Bellevue for the issuance of the city's building permit to the Hawkeye House project. I'm requesting to review any changes that were made to the approved construction after the city issued the building permit. Section 71K of the Freedom of Information Act provides. Let me interrupt you, Mr. Horner, to the issue that I raised with the appellant. The original order of Judge Lasheen was August 1st, 2017, and Judge McGlynn's order was May 22nd, 2018. And case law is that an untimely motion does not toll the 30-day requirement for a notice of appeal the only way an order can be appealed. Do you agree with that? Yes, but what had happened, Your Honor, was Judge Lasheen entered the order. Then he, of course, met an untimely death. Counsel had submitted an affidavit that the clerk's office had not served a copy of that order on counsel. There wasn't any evidence that contradicted that. There was a motion to enlarge time to file a post-judgment motion. I objected on the basis that it cited the wrong rule. It was converted to 2-1401, and counsel sought relief from judgment on that basis. I did find a case that supported that in the event that they weren't. Counsel was not notified. So from there, Judge McGlynn did grant him that relief from the judgment and heard the motion to vacate and to reconsider and vacate the August 2nd order on its merits. Except under 2-1401, the trial court does not have any authority to extend the time for filing a notice of appeal. I believe it was, or it may have been, 13-01. I have to check. Whatever was originally raised from a jurisdictional standpoint was converted from either 13-01 to 14-01 or vice versa. All right. You may proceed. I'm just making sure that counsel's aware, that the court's aware that that's an issue. Okay. And, again, the case itself is framed by the FOIA request. Section 71K essentially provides two exemptions to public disclosure of documents that draw a distinction between private buildings and public buildings. In particular, it reads, and I quote, Architects' plans, engineers, technical submissions, and other construction-related technical documents for projects not constructed or developed in whole or in part with public funds and the same for projects constructed or developed with public funds. So meaning that when they say the same, we go to architects' plans, engineers, technical submissions, and other construction-related technical documents for projects. So it draws that distinction from private buildings, those not constructed or developed in whole or in part with public funds, as distinguished from projects that are constructed or developed with public funds. And then it goes on to list the non-exhaustive examples of those public buildings. And then it puts a caveat on the public buildings, but only to the extent that disclosure would compromise security. So this case essentially turns on that distinction between private and public buildings. Plaintiff, of course, in his complaint, suggests that they were built in part with public funds because of the extension of sewer service to the site. Now, there has been reference to TIF, tax increment financing, of course. I don't believe it's referenced expressly in the complaint, but nevertheless, as a matter of law under the TIF Act, monies can only be spent on TIF-eligible expenses. The construction of a new building is not one of those permissible expenditures. So as far as from a TIF standpoint, as a matter of law in the municipal code, that this cannot be built with public funds. So then we're down to the extension of the sewer service. And I think that Justice Chapman raised really the paramount issue when it comes to the sewer service, that if we are suggesting that or we accept that buildings or any development, whether commercial, residential, or otherwise, is built in part by public funds because of the extension of a public utility, essentially what would happen is we would make every commercial development, every residential development, which means everyone's home, of everyone who's here, subject to FOIA with respect to the plans and specifications and those types of things because virtually the entire state affords sewer service either by the municipality, the township, a special district. Sewer is normally a public utility. Wouldn't that also include roads and water and extensions? Precisely. It would essentially make every building in the state subject to FOIA with respect to the plans and specifications simply by the public providing infrastructure. And again, from a TIF standpoint, infrastructure is a permissible expenditure. But again, the construction of a building, a new building, is not. So this building that is a subject of the Freedom of Information Act request is not built in any way using public funds. And so based upon that, we have both Judge O'Shea and later Judge McGlynn properly concluding that that is not the case, that it was not built with public funds and it's not subject to FOIA based upon this exemption. I understand where you're coming from with regard to that argument. However, what about the argument that the city clerk's the only one that can make the determination to respond to a FOIA demand and that he had indicated that he wished to do so but was being overruled by allegedly a city attorney and the mayor who don't have the authority to make that decision? Who has the ultimate decision-making ability to respond? Actually, in this case, what's alleged in the complaint is that this request that is the subject of the complaint was not kindly responded to. But under the Act, under Section 3B of the Freedom of Information Act, if you don't respond within five business days, then it's deemed denied. It's an automatic denial. So under those circumstances, what happened later was, as you can see, there are several exhibits that are attached to the complaint where some objections made to Bob Sabo in his involvement, who's the department head. There was a complaint made against him, and ultimately the final response was essentially closing that out. Because there's an automated system where only the clerk's office puts in the ultimate denial, but it was denied with exemption based upon exemption. But again, in this case, based on the allegations, because it wasn't responded to by the clerk's office within five business days, it was automatically deemed a denial under 3B. So then the suggestion that Mr. Cook, the clerk, had indicated to the point that he had intended wanted to disclose that information, that was after the five-day automatic denial? Yes. Yeah, I believe that came after the five days. So it's your position that's immaterial? It is immaterial. In fact, I consider virtually all the exhibits to be immaterial because the request is on C11 in the record, the actual request. If it's not responded to, it's deemed denied. Both Judges Sheehan and Judge McGlynn concluded that, and they cite that in their order. And then they go on to address the exemption that was not permitted anyway. So these were all things that were addressed by the trial court, argued extensively at the trial court. I guess after the automatic denial, though, once it's brought to the extent it was to the court's attention, a complaint is filed and the plaintiff secures the FOIA officer's agreement that documents should then be disclosed. Does the clerk not have the authority after an automatic denial for lack of response within the five-day period to change their position and authorize the release of those records? Well, I believe that there are multiple FOIA officers within the municipality. It's the clerk, but then there's deputy FOIA officers that handle these types of things. But as far as the way we're... The way the buck stops is the clerk, though. Everyone else would be below them as far as officers. Correct, but I believe that it rests upon the city as a whole to waive an exemption. Again, if an exemption applies, I think that it should be in vogue, and the city believes that it should be in vogue. And the city, of course, is the party in this case. It's not the clerk. It's not any individual FOIA officer. It really falls on the city to address this. And they did so within the exemptions. And I would like to address counsel's argument with respect to waiver. With respect to the Ordinance 150.17, as counsel noted, it's proof that it was promulgated in 1960, which is 24 years before the Freedom of Recreation Act was enacted. And it provided for some discretionary authority to allow the public inspection of certain records. Now, that doesn't override the enactment of the Freedom of Information Act because even as a homegrown municipality, the state has exclusive authority to regulate FOIA. We couldn't enact ordinances that are contrary to the Freedom of Information Act and have been valid even if we wanted to. So now that we have FOIA enacted, we're required to follow that, and that's exactly what the city did. And as far as previously allowing, there's been some suggestion in these letters that there was a review of some material, but it's obviously not the material that's subject of this FOIA because we wouldn't be here if it were. If Mr. Price had seen the material that he's after, then this lawsuit wouldn't have occurred. And so the exemption still applies. And I don't think the city would voluntarily waive everything just by some allegation that some documents were seen. They're obviously not the documents that Mr. Price wants to see because we wouldn't be here. Now, finally, with respect to the arguments about privacy, naturally the Freedom of Information Act issues the city makes a determination as to the application of an exemption and then notifies the requester. Obviously, there isn't notification to the owner or anybody who is affected by the request in providing an opportunity to intervene. So if somebody asks for documents related to a particular property, there's nothing in the act that contemplates the notification of the property owner. They're intervention, they have to assert rights. We assert exemptions, and the public body is obligated to do so, but we invoke those exemptions without contacting and checking with the property owner. Naturally, if the requester wants to contact the property owner and ask them directly for documents, they're free to do so, but I think that's a red herring about the application of exemptions. Again, public bodies apply the exemptions based upon the request as it comes in. And here we have a request that falls squarely in the non-indigenous language of Section 701K. It's a private building as a matter of law because you can't provide GIF funding for the construction of the new building. The provision of the public utility of the property does not make it constructive in whole or in part by public funding because otherwise, again, we would subject everyone and every property to the Freedom of Information Act. And therefore, the city respectfully requests that this board affirm the judgment of the St. Clair County Circuit Court dismissing plaintiff's complaint with prejudice, and I'd be happy to answer any more questions. Thank you, counsel. Any further? Thank you. I have two points I'd like to make on rebuttal, Your Honors. Number one is that even if Judge Lasheed was correct about applying Exemption 701K, these construction documents in this city, in Belleville, have been made public by Belleville, so this is a special case. This ruling would really not apply to any city that has not made a ruling in favor of our clients. So why would you file the FOIA request if you already had the documents? Your Honor, we tried to get the documents. We first filed the FOIA request. Wait, I thought you just said that they'd already been made public. The documents by law had been made public in Belleville Ordinance 150. The city is not following their own ordinance. Okay, I misunderstood you. I thought you said that the documents were, you did obtain the documents or some of the documents. My client was allowed a limited inspection, but in other words, they opened one of the files on the Blue House project to him. That was in early January 2017, but he felt the production was inadequate. That's why he kept sending FOIA requests to the clerk. My second point on rebuttal is that the only city of Fisher who had authority to invoke any exemptions was the clerk, and he never did so in any part of this record. But he did, no, but he did respond within the five days. He had emailed, maybe not within five business days, but he was emailing my client about getting the documents to him. That is all attached to the complaint, so it's part of the lawsuit. Any other questions, Your Honor? Thank you. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course.